Ralph M. WYNN, M. D., et al.,
Plaintiffs-Appellees,

v.

Bernard CAREY et al.,
Defendants-Appellants.

Nos. 78–1687, 78–1688, 78–2248,
78–2530 and 78–2531.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1979.

Decided May 22, 1979.

John A. Dienner, III, Asst. State's Atty., Patrick A. Trueman, American United For Life Legal Defense Fund, Chicago, Ill., for intervenor.

Merle L. Royce, II, Chapman & Royce, Ltd., Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

This is a consolidated appeal from district court decisions which held unconstitutional and enjoined enforcement of substantial portions of the Illinois Abortion Act of 1975 [1975 Act], Ill.Rev.Stat. ch. 38, §§ 81–21 *et seq.* (1976), and the Illinois Abortion Parental Consent Act of 1977 [1977 Act], Ill.Rev. Stat. ch. 38, §§ 81–51 *et seq.* (1978).[1] The 1975 Act is before us on an appeal from the decision of a three-judge district court in *Wynn v. Scott,* 449 F.Supp. 1302 (N.D.Ill. 1978). The 1977 Act is before us on appeals from the district court's entry of a permanent injunction against the enforcement of portions of the 1977 Act in *Wynn v. Scott,* No. 78 C 237 (N.D.Ill. Sept. 25, 1978 and November 2, 1978).[2] The Attorney General of Illinois, William Scott, did not participate in these appeals. The issue before us in this appeal is the constitutionality of §§ 2(6), 3(2)(a), 3(2)(b), 7, 10, and 11(a) of the 1975 Act and §§ 3, 4(2), 4(3), and 5 of the 1977 Act.

## THE 1975 ACT

The constitutionality of the various provisions at issue in this appeal was addressed in a thorough and well-reasoned opinion of the three-judge district court. 449 F.Supp. 1302. We, therefore, adopt that opinion as our own and add only the following discussion as a supplement.

A. *Section 2(6)*

Section 2(6) provides:

"Criminal Abortion" means the use of any instrument, medicine, drug or other substance, whatever, with the intent to procure a miscarriage of any woman except when done by a physician in conformity with this Act. It shall not be necessary in order to commit a criminal abortion that the woman be pregnant, or if pregnant, that a miscarriage be accomplished.

■ The district court held the definition of criminal abortion in this section to be vague and thus unconstitutional. 449 F.Supp. at 1328–30. The vagueness resulted from the use of the word "miscarriage" in the definition. In the proceedings before the district court, the defendants offered their definition of miscarriage from various medical dictionaries.[3] The district court analyzed their proposed reading of the definition and found it to be underinclusive in light of other specific provisions of the Act. In this appeal the defendants propose yet another definition of miscarriage in an attempt to avoid the constitutional infirmities encountered below. They now argue that "to procure a miscarriage" means "to cause fetal death—whether by inducing expulsion from the mother before the fetus is viable or through a direct attack upon the physical integrity of the fetus at any time in pregnancy." The plaintiffs in response raise what appear to be well-founded problems with this new construction and suggest inconsistencies that would arise if this construction were applied to other sections of the Act. However, we need not resolve this new dispute because we are of the opinion that the defendants' offer of a new construction for the first time in this appeal

1. The 1975 Act is printed in full in an appendix to the district court's opinion, *Wynn v. Scott,* 449 F.Supp. 1302 (N.D.Ill.1978). The provisions held unconstitutional are italicized. The 1977 Act is printed in full in this court's opinion affirming the district court's preliminary injunction, *Wynn v. Carey,* 582 F.2d 1375 (7th Cir. 1978).

2. This court affirmed the preliminary injunction that preceded the permanent injunction. *Wynn v. Carey,* 582 F.2d 1375 (7th Cir. 1978).

3. The district court stated that
    Defendants suggest that according to *Schmidt's Attorneys Dictionary of Medicine* (1973), a miscarriage is the expulsion from the uterus of the developing infant or fetus before it has developed enough to be able to remain alive. *Blakiston's New Gould Medical Dictionary* (1956) defines miscarriage as the expulsion of the fetus before it is viable. Webster's Third New International Dictionary defines miscarriage as expulsion of a human fetus before it is viable, especially between the first and fourteenth weeks of gestation. Thus, the term "miscarriage" contemplates the expulsion of a fetus which is incapable of surviving.
    449 F.Supp. at 1329.

reaffirms *a fortiori* the vagueness of the definition. We, therefore, agree with the district court that § 2(6) is unconstitutionally vague and that a court cannot rewrite a statute under the guise of construing it.

B. *Section 7*

Section 7 provides:

In every case where a live born infant results from an attempted abortion which was not performed to save the life or health of the mother, such infant shall be an abandoned ward of the State under the jurisdiction of the juvenile court wherein the abortion occurred, and the mother and father, if he consented to the abortion, of such infant shall have no parental rights or obligations whatsoever relating to such infant. The attending physician shall forthwith notify said juvenile court of the existence of such live born infant.

The district court held this section unconstitutional because it deprived parents of their parental rights in the child without due process of law. More specifically, the court found that § 7 lacked provisions assuring parents adequate notice that the state proposes to remove the child and an opportunity to prove their fitness as parents at a hearing as required by *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971).

■ The defendants argue in this appeal that the district court failed to consider critical language in § 7 which makes the live born infant a ward of the State "under

the jurisdiction of the juvenile court wherein the abortion occurred . . . ." They argue that this language requires § 7 to be read *in pari materia* with the Illinois Juvenile Court Act, Ill.Rev.Stat. ch. 37, § 701–1 *et seq.,* which provides the due process procedures found lacking by the district court. That Act, they argue, provides parents with notice and an opportunity to be heard when the court determines whether the infant shall be a ward of the court. An infant may be declared a ward of the court under § 704–8(2) if the court finds the infant to be a "neglected minor." A neglected minor is defined under § 702–4(1)(a) as "any minor under 18 years of age . . . who is abandoned by his parents . . . ." The whole focus of these procedures, however, is on a finding that a minor, not a fetus, has been neglected, and therefore these procedures cannot apply to § 7. Absent an explicit legislative statement the term "child" does not include a fetus. *See Burns v. Alcala,* 420 U.S. 575, 578–81, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Poe v. Gerstein,* 517 F.2d 787, 796 (5th Cir. 1975), *aff'd,* 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976); *Reyes v. Superior Court,* 75 Cal.App.3d 214, 216, 141 Cal.Rptr. 912, 913 (4th Dist.1977); *Rothenberger v. Doe,* 149 N.J.Super. 478, 374 A.2d 57, 58 (1977). Any finding that an attempted abortion could possibly constitute neglect by the parents could only mean neglect directed to a fetus and not to a live born infant described in § 7.[4] The procedures of the Illinois Juvenile Court Act thus do not cure the constitutional infirmities of § 7.[5]

4. Abandonment requires " 'conduct on the part of a parent which demonstrates a settled purpose to forego all paternal duties and to relinquish all parental claims to the child.' " *Petition of Lehmann,* 37 Ill.App.3d 217, 223, 345 N.E.2d 742, 746 (1st Dist. 1976).

5. Because we agree with the district court that § 7 is unconstitutional in that it lacks adequate due process procedures, we need not reach the question of whether § 7 erects an unconstitutional irrebuttable presumption of parental unfitness.

In a recent case, the United States Supreme Court held unconstitutional a provision [§ 188.-045] in a Missouri abortion statute which required physicians to inform women seeking

abortions of § 188.040 of the Missouri abortion act which is almost identical to § 7 of the Illinois Act. *Ashcroft v. Freiman,* —— U.S. ——, 99 S.Ct. 1416, 59 L.Ed.2d 630 (1979). The constitutionality of § 188.040 itself, however, was not before the Court because the plaintiff who raised it below was held to have lacked standing to raise it. *Freiman v. Ashcroft,* 584 F.2d 247 (8th Cir. 1978). Although this case buttresses the district court's holding that § 8 of the 1975 Act is unconstitutional, the defendants have conceded § 8's unconstitutionality, albeit on other grounds, and thus this recent Supreme Court decision does not affect the issues before us in this appeal.

## THE 1977 ACT

■ Sections 3 and 5, the definition of abortion section and the criminal liability section, are unconstitutional for the same reasons we have just held unconstitutional §§ 2(6) and 11(a) of the 1975 Act.

■ The only other sections at issue in this appeal are §§ 4(2) and (3), the 48-hour waiting period section and the parental consent section. The views of our court regarding the unconstitutionality of the parental consent section were thoroughly articulated by Judge Swygert's opinion in an earlier interlocutory appeal. *Wynn v. Carey*, 582 F.2d 1375, 1386–90 (7th Cir. 1978). We reaffirm Judge Swygert's opinion and its supporting reasoning and on that basis affirm the judgment of the district court permanently enjoining the enforcement of that section.

The 48-hour waiting period section violates the equal protection clause of the 14th Amendment for the same reasons. It is underinclusive because it excludes married minors and overinclusive because it includes mature, emancipated minors. *See* Note, *The Illinois Abortion Parental Consent Act*, 12 John Marsh. J. of Prac. & Proc. 135, 150–52 (1978).[6] We, therefore, affirm the district court's permanent injunction against its enforcement.

■ Finally, we note that the plaintiffs have asked us to dismiss the appeals of intervening defendant, Dr. Eugene Diamond, for lack of standing. Defendants, in their reply brief to this court, have defended Dr. Diamond's "standing" in these suits. We find this controversy over his standing rather unusual, and indeed, misdirected. The standing doctrine, which is derived from the Article III case or controversy requirements of the Constitution, applies only to plaintiffs. We are unaware of any persuasive authority suggesting that an intervening defendant's appeal may be dismissed for lack of his standing. The proper

analysis by which to test whether an intervening defendant has a sufficient interest in the case to prosecute an appeal is to determine whether the district court abused its discretion in permitting the defendant to intervene pursuant to Rule 24, *Fed.R.Civ.P.* Because the plaintiffs failed to raise this issue, we need not address it.

For the reasons stated herein, we affirm the judgments of the district court.

---

6. The defendants' argument in this appeal that the waiting period does not violate the equal protection clause is premised on their assertion that the classification should be tested under the rational basis test. Because the waiting period clearly affects a minor's fundamental privacy right to decide to terminate her pregnancy, strict scrutiny is the proper level of review. *See Wynn v. Carey*, 582 F.2d at 1384–85.