Dennis CHRISTENSEN, M.D.; Madison Abortion Clinic; Mary Poe, individually and on behalf of all others similarly situated, Plaintiffs,

v.

WISCONSIN MEDICAL BOARD, Nelson A. Moffat, M.D., Chairman, Wisconsin Medical Examining Board, individually and in his official capacity; Bronson C. La Follette, Attorney General of the State of Wisconsin, individually and in his official capacity, Defendants.

No. 80–C–575.

United States District Court, W.D. Wisconsin.

Nov. 29, 1982.

---

James A. Olson, Lawton & Cates, Madison, Wis., for plaintiffs.

LeRoy L. Dalton, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This civil action for declaratory and injunctive relief is before the court on plaintiffs' motions for class certification, preliminary injunction, and partial summary judgment, and on defendants' motion to dismiss, which defendants request be treated as a motion for summary judgment.

Plaintiffs challenge the constitutionality of the Wisconsin Medical Examining Board regulation, Wisconsin Administrative Code Med. § 11.05, which restricts the performance of second trimester abortions (those undertaken after the twelfth week of gestation) to hospitals in which general surgical procedures are customarily performed, except in an emergency.[1] In the complaint and her accompanying affidavit, Mary Poe, a pseudonym for an actual plaintiff, alleged that she was raped on August 1, 1980; that because she had not previously been sexually active, she was not using any contraceptive device or medication; that she consulted a doctor near the end of September and, when she told him she had missed a menstrual period, he assured her that it was probably due to the stress of starting college; that she consulted plaintiff Christensen on October 23, 1980, and, on the basis of a pregnancy test and pelvic examination, he informed her that she was approximately fourteen to fifteen weeks pregnant, dated from the onset of her last menstrual period. Plaintiff Poe further alleged that she wished to undergo an outpatient second trimester abortion in a non-hospital ambulatory facility.

In the complaint, plaintiff Christensen alleged that it was his medical judgment that a second trimester dilation and evacuation abortion in a non-hospital outpatient surgical facility[2] was an appropriate medical procedure for plaintiff Poe; that he wished to perform that procedure for plaintiff Poe as well as for other patients; but that he is prohibited from doing so by the administrative regulation in question.

It appears from the affidavits submitted in the case that there is a genuine issue of fact between the parties as to the relative safety of hospital and non-hospital second trimester abortions. Because this fact is material to determination of the case on its merits, I am unable to ascertain the likelihood of plaintiffs' success on the merits for the purpose of deciding plaintiffs' motion

---

1. The exact text of the regulation is:

   *After 12 weeks gestation.* If an abortion is to be performed after the twelfth week of gestation, except in an emergency, it must be performed in a hospital approved by the state under section 140.26, Wis.Stats., in which general surgical procedures are customarily performed.

2. *Madison Abortion Clinic appears to be such a facility.*

for a preliminary injunction. For the same reason, I decline defendants' request that the motion to dismiss be treated as a motion for summary judgment pursuant to Rule 12(b) and Rule 56, Federal Rules of Civil Procedure, and I exclude matters outside the pleading from consideration of defendants' dismissal motion. Taking the allegations in plaintiffs' complaint as true, as I am required to do under Rule 12(b)(6), Federal Rules of Civil Procedure, I find that the allegations are sufficient to withstand the motion to dismiss for failure to state a claim upon which relief can be granted.

■ Before turning to the substance of plaintiffs' complaint, I address their motion for class certification. Plaintiff Poe seeks certification as representative of the class of all women in Wisconsin seeking second trimester abortions in non-hospital ambulatory surgical centers, and plaintiff Christensen seeks certification as representative of the class of all Wisconsin physicians seeking to perform second trimester abortions in non-hospital ambulatory surgical centers. I find that both plaintiffs have met all the requirements of Rule 23(a) and 23(b)(2), Federal Rules of Civil Procedure. Each plaintiff is a member of the class he or she seeks to represent and will fairly and adequately protect the interests of each class; plaintiffs are represented by experienced counsel; joinder of all members of each numerous class would be impracticable; there are questions of law and fact common to each class member; and the state regulation in question is applicable to each class generally, making final declaratory and injunctive relief appropriate with respect to each class as a whole.

Defendants have pointed out that, if plaintiff Poe was raped on the day she alleges, she was in fact within the first trimester of pregnancy when she consulted Christensen on October 23, 1980, because her pregnancy had progressed only to the eighty-fourth day of gestation. Even if Christensen had assurance that plaintiff Poe's memory of the date of the rape was accurate,[3] it remained to be decided by him and his patient whether an abortion should be performed that day or should be delayed for reflection, counselling, or any other reason. It is undisputed that on the day the complaint in this case was filed, October 31, 1981, plaintiff Poe was in the second trimester of pregnancy and wished to obtain a non-hospital abortion. This fact suffices to grant her standing, to make her claim ripe, and to accord her membership in the class she seeks to represent. *Doe v. Bolton,* 410 U.S. 179, 187, 93 S.Ct. 739, 745, 34 L.Ed.2d 201 (1973), *reh. denied,* 410 U.S. 959, 93 S.Ct. 1410, 35 L.Ed.2d 694 (1973).[4]

■ I turn now to the sufficiency of plaintiffs' allegations.

---

**3.** In fact, Dr. Christensen's physical examination of Mary Poe disclosed that her pregnancy might have been as far advanced as thirteen weeks of gestation (length of gestation being approximately two weeks shorter than the length of pregnancy from last menstrual period), which would have placed her in the second trimester.

**4.** The fact that plaintiff Poe is no longer pregnant does not moot her claim, since pregnancy is a condition "capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973).

In their deposition of plaintiff Christensen and in their Memorandum in Support of Motion to Dismiss and In Opposition to Motion for Preliminary Injunction, defendants have also raised the issue of limitations on plaintiff Christensen's abortion practice, such as a court order imposing geographical limits on his performance of first trimester abortions, and a hospital committee prohibition on his performance of second trimester abortions in Madison General Hospital except under a peer review system. It is not clear that these restrictions, which arise from litigation and proceedings unrelated to the instant case, are still in effect. In any event, I find that none of them is relevant to or in any way undermines plaintiff Christensen's assertion that he wishes to perform second trimester abortions and is prevented from doing so by the challenged regulation. Plaintiff Christensen has standing to assert the rights of his patients, *see Singleton v. Wulff,* 428 U.S. 106, 113–18, 96 S.Ct. 2868, 2873–76, 49 L.Ed.2d 826 (1976), *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965), as well as his own interest in practicing his profession free of arbitrary restraints and possible sanctions, *Doe v. Bolton,* 410 U.S. at 188, 93 S.Ct. at 745.

Almost a decade ago, the Supreme Court of the United States held that a woman's constitutionally-protected zone of personal privacy includes the right to obtain an abortion, and that this right is a fundamental interest "implicit in the concept of ordered liberty." *Roe v. Wade,* 410 U.S. at 153–4, 93 S.Ct. at 726–7. Furthermore, the Court held that this fundamental interest, while not absolute, may be limited only by regulations which are justified by a compelling state interest and which are narrowly drawn to express only that state interest. *Id.,* 410 U.S. at 155, 162–3, 93 S.Ct. at 727, 731–2.

Cases decided since *Roe v. Wade* have consistently applied its strict scrutiny test to a variety of abortion regulations. *Planned Parenthood Association of Kansas City, Mo., Inc. v. Ashcroft,* 655 F.2d 848 (8th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982); *Akron Center for Reproductive Health, Inc. v. City of Akron,* 651 F.2d 1198 (6th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982); *Wolfe v. Strumbo,* No. C80–0285, Slip op. (W.D.Ky. December 3, 1980); *Charles v. Carey,* 627 F.2d 772 (7th Cir.1980); *Margaret S. v. Edwards,* 488 F.Supp. 181 (E.D.La.1980); *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Wynn v. Carey,* 599 F.2d 193 (7th Cir.1979); *Wynn v. Carey,* 582 F.2d 1375 (7th Cir.1978); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Friendship Medical Center, Ltd. v. Chicago Board of Health,* 505 F.2d 1141 (7th Cir.1974), *cert. denied* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). It is well established "that the same test must be applied to state regulations that burden an individual's right to . . . terminate pregnancy by substantially limiting access to the means of effectuating that decision as is applied to state statutes that prohibit the decision entirely." *Carey v. Population Services International,* 431 U.S. 678, 688, 97 S.Ct. 2010, 2017, 52 L.Ed.2d 675 (1977).

In this case, the burden is on plaintiffs to show that the challenged regulation in fact intrudes on the fundamental constitutional right to choose abortion. *Charles v. Carey,* 627 F.2d at 776–7 (7th Cir.1980). In *Maher v. Roe,* the Supreme Court held that a state program providing funds to indigents for childbirth but not for nontherapeutic abortion did not burden the exercise of indigent women's right to choose abortion, since the state action "imposed no restriction on access to abortions that was not already there" by virtue of their poverty. *Maher v. Roe,* 432 U.S. at 464, 474, 97 S.Ct. at 2376, 2382, 53 L.Ed.2d 484 (1977). *See also Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784, *reh. denied* 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). Whatever the ambiguities of this distinction, it is clear on the face of the regulation in question here that it affirmatively creates a restriction on access to abortion and thereby interferes with a woman's fundamental privacy right. *See Wynn v. Scott,* 449 F.Supp. 1302, 1307–8 (N.D.Ill.1978), *appeal dismissed sub nom. Carey v. Wynn,* 439 U.S. 8, 99 S.Ct. 49, 58 L.Ed.2d 7 (1978), *aff'd,* 599 F.2d 193 (7th Cir.1979).

Since I find, as a threshold matter, that the Wisconsin medical regulation burdens the exercise of a fundamental right, the regulation is presumed unconstitutional, *Harris v. McRae,* 448 U.S. at 312, 100 S.Ct. at 2685, and the burden shifts to defendants to show that there is a compelling justification for the regulation and that it is narrowly drawn to express only the state interest at stake. *Charles v. Carey,* 627 F.2d at 776–7; *Roe v. Wade,* 410 U.S. at 155, 93 S.Ct. at 727.

The state's interest in preserving and protecting maternal health has been found to be a legitimate compelling interest which the state may safeguard by regulating abortion procedure accordingly. *Roe v. Wade,* 410 U.S. at 162–3, 93 S.Ct. at 731–2. However, this compelling interest is not present at all stages of pregnancy but rather arises at the point where mortality rates for abortion exceed mortality rates for normal childbirth. *Roe v. Wade,* 410 U.S. at 149, 163, 93 S.Ct. at 724, 731. Applying this test, the Supreme Court found in *Wade* that "*in the light of present medical knowl-*

*edge*," the compelling state interest in maternal health arose at "*approximately* the end of the first trimester." *Roe v. Wade,* 410 U.S. at 163, 93 S.Ct. at 731 (emphasis added).

The first trimester standard is not "graven in stone," *Wolfe v. Stumbo,* slip op. at 7, but rather must be reassessed in light of the changing state of medical knowledge. Several courts have found that advances in second trimester abortion technique, including the development of the dilation and evacuation procedure involved in this case, have shifted to at least halfway through the second trimester the point at which mortality rates for abortion exceed those for normal childbirth. *Wolfe v. Stumbo,* slip op. at 2; *Akron Center for Reproductive Health, Inc. v. City of Akron,* 651 F.2d at 1210; *Margaret S. v. Edwards,* 488 F.Supp. at 195. *See also Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. at 78, 96 S.Ct. at 2845 (maternal mortality rate in childbirth exceeds mortality rate for second trimester saline amniocentesis abortion). An analogous flexibility has been shown in judicial determination of the point of fetal viability (at which time the state's compelling interest in protecting potential human life arises, *Roe v. Wade,* 410 U.S. at 163, 93 S.Ct. at 731, which *Wade* placed at approximately twenty-four to twenty-eight weeks, 410 U.S. at 160, 93 S.Ct. at 730. *See Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. at 61, 96 S.Ct. at 2837 ("... dependent upon developing medical skill and technology"), *Colautti v. Franklin,* 439 U.S. at 387, 99 S.Ct. at 681 ("... flexible for anticipated advancements in medical skill").

Defendants contend that *Wade* sets the end of the first trimester as a "bright line" signalling the commencement of a compelling interest in maternal health which would justify such regulations as a requirement that all abortions be in hospitals. *See Roe v. Wade,* 410 U.S. at 163, 93 S.Ct. at 731. The Court's explicit statement in *Wade* that it was acting in the light of present medical knowledge, coupled with subsequent treatment of the issue in the courts as described immediately above,

shows the absence of any "bright line" to guide the fixing of a "compelling point." Nor does *Gary-Northwest Indiana Women's Services, Inc. v. Bowen,* 496 F.Supp. 894 (N.D.Ind.1980), *aff'd without opinion* 451 U.S. 934, 101 S.Ct. 2012, 68 L.Ed.2d 321 (1981), definitively establish such a bright line test. *Cf. Akron Center for Reproductive Health, Inc. v. City of Akron,* 651 F.2d at 1210. Whatever the original precedential value of the summary affirmance of the three-judge district court opinion in *Gary-Northwest,* it was severely undercut by the Supreme Court's May 1982 grant of plenary review in three cases challenging the constitutionality of second trimester hospitalization requirements, *Simopoulos v. Virginia,* —— U.S. ——, 102 S.Ct. 2265, 73 L.Ed.2d 1281; *Akron Center for Reproductive Health, Inc. v. City of Akron,* —— U.S. ——, 102 S.Ct. 2266, 73 L.Ed.2d 1282 and *Ashcroft v. Planned Parenthood Association of Kansas City, Mo., Inc.,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282. *See Poe v. Dept. of Public Health,* No. 78 C 4126, slip op. (N.D.Ill. September 27, 1982).

If defendants are unable to demonstrate at trial by a preponderance of the evidence that abortion throughout the second trimester entails a higher maternal mortality rate than natural childbirth, they will not have sustained their burden to show a compelling state interest, and plaintiffs will be entitled to relief.

If defendants are able to show a compelling state interest, the burden will remain on them to demonstrate that the challenged regulation is "narrowly drawn to express only the legitimate state interest[ ] at stake." *Roe v. Wade,* 410 U.S. at 155, 93 S.Ct. at 727. This test is more demanding than the familiar "rational relation" test applied to state exercises of police power that do not impinge on a fundamental interest. *Maher v. Roe,* 432 U.S. at 478, 97 S.Ct. at 2385; *Friendship Medical Center, Ltd. v. Chicago Board of Health,* 505 F.2d at 1150. In short, the burden on defendants is to show that allowing non-hospital second trimester abortions would create more maternal mortality and morbidity than re-

stricting all such abortions to hospitals. *See Planned Parenthood of Kansas City, Mo., Inc. v. Ashcroft*, 664 F.2d at 687, 689–90 (8th Cir.1981).

In order to prevail on this point, defendants must be able to prove at minimum that non-hospital second trimester dilation and evacuation procedures are more dangerous than second trimester hospital abortions. *Cf. Planned Parenthood Association of Kansas City, Mo., Inc. v. Ashcroft*, 664 F.2d at 689–90 (finding no difference in safety). However, in evaluating the relative safety of the group of procedures permitted by the challenged statute and the group of procedures that would include non-hospital second trimester abortions, it is not sufficient merely to compare the outcomes of the medical procedures themselves. A woman's privacy right persists even after the inception of a compelling state interest in maternal health. *Friendship Medical Center v. Chicago*, 505 F.2d at 1154, fn. 19. It is therefore necessary to examine the availability of alternative means of exercising the fundamental right to choose abortion, and the relative safety of those means to the ones the state seeks to prohibit. *See Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. at 75–79, 96 S.Ct. at 2844–2845. It seems likely from plaintiffs' complaint that they will present evidence at trial of the geographic and financial constraints that may prevent women from seeking hospital abortions, and of the dangers of the alternatives. Other courts have recognized the mental and physical damage wrought by bearing and raising an unwanted child, *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 726, the miserable and often fatal results of illegal abortions or self-abortion, *Margaret S. v. Edwards*, 488 F.Supp. at 193, and the increased chance of complication when abortion is delayed due to travel or unavailability of a bed in a hospital, *Id.*, 448 F.Supp. at 193–4. Defendants must prove that the prohibition of second trimester abortions in non-hospital out-patient surgical facilities, evaluated in the light of alternative avenues for the exercise of the right

to procure abortion, "reasonably relates to the preservation and protection of maternal health." *Roe v. Wade*, 410 U.S. at 163, 93 S.Ct. at 731.

In view of the above, and of the holdings in favor of plaintiffs' position in *Wolfe v. Stumbo, Planned Parenthood Association of Kansas City, Mo., Inc. v. Ashcroft*,[5] and *Margaret S. v. Edwards*, I find that plaintiffs' allegations are sufficient to withstand defendants' motion to dismiss for failure to state a claim. The trial in this action will be consolidated with the hearing on plaintiffs' motion for preliminary injunction, pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is DENIED.

The Clerk of Court is instructed to schedule a consolidated trial and preliminary injunction hearing in this action.

