UNITED STATES of America,
Plaintiff–Appellee,

v.

Stephen Paul DUNIFER, Defendant–
Appellant.

No. 99–15035.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2000

Filed July 20, 2000

Louis N. Hiken, San Francisco, California, for the defendant-appellant.

Jacob M. Lewis, Civil Division, U.S. Department of Justice, Washington, DC, for the plaintiff-appellee.

Before: TASHIMA and GRABER, Circuit Judges, and BREWSTER, District Judge [*]

TASHIMA, Circuit Judge:

Stephen Paul Dunifer ("Dunifer") appeals from the district court's summary judgment granting injunctive and declaratory relief in favor of the United States in this action brought under § 301 of the Communications Act of 1934, 47 U.S.C. § 301, which prohibits the operation of a radio station without a Federal Communications Commission ("FCC") license.[1] Dunifer contends that the district court erred in ruling that he lacked standing to challenge the statutory validity and constitutionality of FCC licensing regulations as a defense to the government's action. The district court had jurisdiction of the underlying action pursuant to 28 U.S.C. §§ 1331 and 1345, and 47 U.S.C. § 401(a). We have jurisdiction under 28 U.S.C. § 1291. We do not reach the standing issue because we conclude that the district court lacked subject matter jurisdiction under the applicable statutory framework to decide Dunifer's challenges to the licensing regulations, and we affirm on that ground.

## I. Factual and Procedural Background

In late April and early May 1993, agents from the FCC's Field Operations Bureau ("Bureau") monitored transmissions on an FM frequency from an unlicensed, low power radio station in Berkeley, California, which identified itself as "Free Radio Berkeley." The strength of the signals was determined to be greater than that permitted for unlicensed stations under 47 C.F.R. § 15.239(b).[2] The agents traced the transmissions to an antenna on the roof of Dunifer's residence and, in June 1993, the Bureau sent Dunifer a Notice of Apparent Liability for a monetary forfeiture of $20,000.

Dunifer filed a response to the notice asserting constitutional, statutory, and evidentiary arguments why a forfeiture should not be imposed, all of which the Bureau rejected. In December 1993, Dunifer filed an Application for Review of the forfeiture with the FCC.

In October 1994, before the FCC responded to the Application for Review, the government, on behalf of the FCC, brought this action for declaratory and injunctive relief to prohibit Dunifer from engaging in unlicensed radio broadcasting in violation of § 301.

In its initial order, the district court denied the government's motion for a preliminary injunction. It found that, while the government had shown probable success on the merits that Dunifer violated § 301 by broadcasting without a license, it did not show a sufficient probability of success in rebutting Dunifer's contention that FCC regulations precluding low power radio broadcasting were unconstitution-

---

[*] The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

1. The statute provides in relevant part:
   No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District ... except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.
   47 U.S.C. § 301.

2. Section 15.239(b) effectively limits unlicensed radio broadcasts to a two-block radius.

al.[3] The district court also found that there was no possibility of irreparable harm, in part because the government could not support its assertions that Free Radio Berkeley was interfering with licensed broadcasts. The district court then stayed the action under the doctrine of primary jurisdiction, so that the FCC could first address in administrative proceedings the constitutional arguments raised by Dunifer. In August 1995, the FCC rejected Dunifer's constitutional arguments by responding to his Application for Review of the initial forfeiture order, and it ultimately imposed a $10,000 monetary forfeiture.

The government then moved for summary judgment. The district court held that it had subject matter jurisdiction under the applicable statutory scheme to hear Dunifer's arguments concerning the unconstitutionality of the regulations, assuming that Dunifer had standing to raise those arguments. Nonetheless, the district court requested the parties to brief further whether "the unconstitutionality of the FCC regulatory scheme would be a valid defense" to the statutory violation in the first instance.

In its final order, the district court granted summary judgment in favor of the government and permanently enjoined Dunifer from broadcasting without a license. It held that Dunifer lacked standing to challenge the regulations, except for overbreadth under the First Amendment. It then rejected Dunifer's overbreadth challenge on the merits. Dunifer filed a motion to amend the judgment, *see* Fed. R.Civ.P. 59(a), which was denied. Dunifer timely appealed.

## II. Standard of Review

■■■ We review de novo the district court's assumption of jurisdiction. *See United States v. Bennett,* 147 F.3d 912, 913 (9th Cir.1998). We may affirm the district court's judgment on any ground supported by the record. *See Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1026 (9th Cir.1996).

## III. Jurisdiction of the District Court

■■■ Because we conclude that the Communications Act precludes the district court's jurisdiction to decide Dunifer's defenses in this case, we need not examine whether the district court lacked jurisdiction over Dunifer's defenses on the ground of lack of standing. Pursuant to 47 U.S.C. § 401(a), the district courts have jurisdiction to entertain actions by the government to enjoin persons who are broadcasting in violation of the statutory licensing requirement. Even though Dunifer does not challenge the constitutionality of the statutory licensing requirement of § 301,[4] he asserts that his challenge to the regulations implementing that provision is a valid defense to the requested injunction. Ordinarily, the district courts would have subject matter jurisdiction to entertain constitutional and statutory defenses to an injunctive action. *See, e.g., United States v. Hugs,* 109 F.3d 1375, 1377–78 (9th Cir. 1997) (holding implicitly that the district court had jurisdiction to entertain the defendants' challenge to the facial constitutional validity of a regulatory licensing scheme).

However, 47 U.S.C. § 402(a) provides that "[a]ny proceeding to enjoin, set aside,

**3.** From 1978 to early 2000, FCC regulations prevented the licensing of any new commercial and non-commercial FM stations below 100 watts (Class D stations) except in Alaska. *See* 47 C.F.R. §§ 15.239(a), 73.211(a), 73.511(a). During that time period, however, waiver provisions potentially permitted low power radio broadcasters to receive a license. *See* 47 C.F.R. § 1.3. On January 27, 2000, the FCC adopted rules authorizing the licensing of two new classes of radio stations—one op-

erating at a maximum power of 100 watts and another at a maximum power of 10 watts. *See* Creation of Low Power Radio Service, 65 Fed.Reg. 7616 (to be codified at 47 C.F.R. pts. 11, 73, 74) (Feb. 15, 2000).

**4.** The Supreme Court upheld the constitutionality of the licensing requirement in *National Broad. Co. v. United States,* 319 U.S. 190, 227, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).

annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section)[5] shall be brought as provided by and in the manner prescribed in chapter 158 of title 28." In turn, 28 U.S.C. § 2342 (in chapter 158) provides that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend . . . or determine the validity of—(1) all final orders of the [FCC] made reviewable by section 402(a) of title 47."

In *Sable Communications of Cal., Inc. v. FCC*, 827 F.2d 640 (9th Cir.1987), we held that the district court lacked jurisdiction over an action claiming that a FCC regulation unconstitutionally restricted sexually suggestive telephone services, because the challenge to the regulation was effectively an action to " 'enjoin, set aside, suspend [and] determine the validity of' " a final order of the FCC. *Id.* at 642–43 (quoting 28 U.S.C. § 2342); *see also Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396–97 (9th Cir.1996) ("Together, [§§ 402(a) and 2342] vest the courts of appeals with exclusive jurisdiction to review the validity of FCC rulings."); *Moser v. FCC*, 46 F.3d 970, 973 (9th Cir.1995) (noting that a challenge to FCC regulations is outside the jurisdiction of the district court).

■ By its terms, the Communications Act's jurisdictional limitations apply as much as to affirmative defenses as to offensive claims. We find especially persuasive the Eighth Circuit's opinion in *United States v. Any and all Radio Transmission Equip.*, 207 F.3d 458 (8th Cir.2000) ("*Laurel Avenue*"), in which the court so held.[6]

As the Eighth Circuit properly noted, the Supreme Court has already determined that "the exclusive jurisdiction of the Court of Appeals over rulemaking by the FCC may not be evaded by seeking to enjoin a final order of the FCC in the district court." *Id.* at 463 (citing *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984)). To allow Dunifer to contest the validity of the implementing regulations would create just such an evasion. *See Laurel Avenue*, 207 F.3d at 463 ("A defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction.").

■ Dunifer relies on the recent opinion of the Sixth Circuit in *United States v. Any and All Radio Station Transmission Equip.*, 204 F.3d 658 (6th Cir.2000) ("*Maquina Musical*"), for the proposition that challenging the FCC regulations does not contest any "FCC order." *Id.* at 667. We have squarely held, however, that challenging FCC regulations is equivalent to an action to enjoin, annul, or set aside an order of the FCC. *See Sable Communications*, 827 F.2d at 642. Moreover, as we have expressed above, we agree with the reasoning of *Laurel Avenue*.[7]

In concluding that it otherwise had subject matter jurisdiction over Dunifer's defenses, aside from the standing issue, the district court relied on *Dougan v. FCC*, 21 F.3d 1488 (9th Cir.1994). In that case, the petitioner sought review in this court of a final monetary forfeiture order of the FCC

---

5. This case involves none of the appealable actions listed in 47 U.S.C. § 402(b).

6. *Laurel Avenue* involved an in rem forfeiture action brought in the district court pursuant to 47 U.S.C. § 510(a). *See* 207 F.3d at 459. Although we find its reasoning persuasive, we do not decide the separate issue whether the restrictions of 47 U.S.C. § 402(a) apply equally to forfeiture actions under § 510(a), a subject that we have previously addressed, at least with respect to monetary forfeitures, in *Dougan v. FCC*, 21 F.3d 1488 (9th Cir.1994).

7. *Maquina Musical* relied on *United States v. Any and All Radio Station Equip.*, 169 F.3d 548 (8th Cir.), *reh'g granted*, 182 F.3d 1026 (8th Cir.1999), which was superseded by *Laurel Avenue*, 207 F.3d 458 (8th Cir.2000). *See Prayze FM v. FCC*, 214 F.3d 245 (2d Cir. 2000) (noting the apparent inter-circuit split on the instant jurisdictional issue and pointing out the Sixth Circuit's reliance on now out-of-date Eighth Circuit case law).

holding that he had violated § 301 and 17 C.F.R. § 15.29 "by operating a radio station without a license and by refusing to permit FCC engineers to inspect [Dougan's] station." *Id.* at 1489. In particular, Dougan challenged the FCC's jurisdiction over his broadcasts as well as the constitutionality of the FCC licensing regulations. *See id.* at 1489–90. We held that this court lacked subject matter jurisdiction over the appeal, *see id.* at 1490–91, because the "specific" jurisdictional grant of § 504(a) to the district courts over forfeiture actions trumped the general jurisdictional grant of § 402(a) to the courts of appeals to review FCC orders, *see id.* We reasoned that "Congress did not intend to give petitioners two bites at the apple by allowing them to challenge the forfeiture in the appellate court and, if they lost, to sit back and await an enforcement action, at which time they would be entitled to a trial *de novo* in the district court." *Id.* at 1491 (citing *Pleasant Broad. Co. v. FCC,* 564 F.2d 496, 500–01 (D.C.Cir.1977)).

We do not believe that *Dougan*'s reasoning, with respect to challenges to FCC regulations, applies to injunctive actions. Specifically, the "two bites at the apple" reasoning does not apply to defensive constitutional challenges to the regulations if, under § 402(a), the district courts have no jurisdiction over them.[8] We therefore decline the invitation to extend *Dougan* to injunctive actions; its holding remains limited to forfeiture actions brought under 47 U.S.C. § 504(a).

■ We conclude that the Communications Act's jurisdictional restrictions on the district courts require that anyone seeking to broadcast first go through the FCC, or be subjected to injunctive relief, *even if* the underlying regulatory (as distinct from statutory) scheme is claimed to be unconstitutional. As the Eighth Circuit properly noted, these statutory restrictions on jurisdiction are sensible. *See Laurel Avenue,* 207 F.3d at 463. First, by requiring the FCC initially to pass on the validity of its own regulations, the agency may apply its expertise to the question at hand. *See id.* Second, it "ensure[s] review based on an administrative record made before the agency charged with implementation of the statute." *Id.* Third, it assists in "uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress" to enforce the statutory scheme governing the nation's airwaves. *New York Tel. Co. v. New York Dep't of Labor,* 440 U.S. 519, 528, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979).

In this regard, it is important to note that this is not a case in which Dunifer had no means to obtain judicial review of the regulations. *Cf. Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212–13, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (construing claims in a manner so as not to foreclose all judicial review). Dunifer could have applied for a license and sought a waiver of the applicable FCC rules,[9] or he could

---

8. Indeed, with respect to regulatory challenges, *Dougan* relied too broadly on *Pleasant Broadcasting,* in which the parties did not challenge the underlying regulations, but merely asserted standard defenses to the validity of the FCC orders. *See Pleasant Broad.,* 564 F.2d at 499–500 (noting that one of the defendants contested that it fell within the scope of the regulations apparently violated, and another of the defendants argued that the FCC departed from its policies and precedents).

9. 47 C.F.R. § 1.3 states that "[t]he provisions of this chapter may be suspended, revoked, amended, or waived for good cause shown." Dunifer argues that he constructively applied

for a license by setting forth the "nature of the license he sought" in his Application for Review of the monetary forfeiture. This argument is misguided, as Dunifer concededly did not comply with the statutory and regulatory requirements for a license application. *See* 47 U.S.C. § 308(b) (noting that the applicant must set forth "facts ... as to citizenship, character, and financial, technical, and other qualifications ... to operate the station"); 47 C.F.R. § 73.3533 (listing the various forms that must be completed to apply for a license). Nor was Dunifer's request for a copy of the standards relating to waivers equivalent to a waiver request itself. *See* 47 C.F.R. § 73.3566(a) (noting that a waiver application must "show the nature of the waiver or ex-

have filed a petition for a rulemaking for new low power regulations,[10] a denial of which would be reviewable by a court of appeals. *See Turro v. FCC,* 859 F.2d 1498, 1499 (D.C.Cir.1988) (reviewing a denial of a license request pursuant to 47 U.S.C. § 402(b)); *Quincy Cable TV, Inc. v. FCC,* 768 F.2d 1434 (D.C.Cir.1985) (reviewing a determination of the FCC regarding a petition for a rulemaking pursuant to 47 U.S.C. § 402(a)). Instead, Dunifer decided to evade this carefully crafted process by concededly violating the regulatory framework implemented by the FCC.

While the district court had jurisdiction to entertain the government's action for injunctive relief, it lacked jurisdiction to adjudicate Dunifer's affirmative defenses. We therefore AFFIRM the decision of the district court, albeit on a different ground.

---

ception desired and shall set forth the reasons in support thereof").

**10.** 47 C.F.R. § 1.401(a) provides that "[a]ny interested person may petition for the issu-

ance, amendment or repeal of a rule or regulation" of the FCC. Indeed, the FCC's new lower power regulations were established in response to a petition for a rulemaking.