# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3539

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota |
| Roy Neset, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 1999

Filed: November 28, 2000

_____

Before McMILLIAN, HEANEY and FAGG, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Roy Neset appeals from a final order entered in the District Court[1] for the District of North Dakota granting declaratory and injunctive relief in favor of the United States (the government), acting on behalf of the Federal Communications Commission (FCC). United States v. Neset, 10 F. Supp. 2d 1113 (D.N.D. 1998). For reversal, Neset argues that the district court erred in (1) finding that he lacked standing to raise his First Amendment defenses, (2) requiring him to exhaust administrative

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

remedies before he could raise his First Amendment defenses, and (3) applying the doctrine of primary jurisdiction to preclude him from raising his statutory defenses. For the reasons discussed below, we affirm the judgment of the district court.

The government asserted that the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345, and 47 U.S.C. § 401(a) (civil applications to enjoin violations of Communications Act of 1934). This court has appellate jurisdiction under 28 U.S.C. § 1291. Neset filed a timely notice of appeal under Fed. R. App. P. 4(a)(1)(B).

The facts in the present case are not disputed. Neset is a farmer in Tioga, North Dakota, a small town in the upper northwest corner of the state. Tioga's only radio station, KTGO, broadcasts country music. Neset likes to listen to talk radio and received permission from a Colorado radio station to broadcast that station's talk and news programming. Neset used a one-watt transmitter with a 30-watt amplifier to broadcast primarily over his own property, that is, from his house to his tractor while working in his fields. The signal could be heard at a range of about 5 miles from Neset's property. About 8-10 other individuals also listened to his broadcasts. The signal did not interfere with any other broadcasts or stations or threaten public safety.

Except for certain special broadcasts and extremely low-power broadcasts, it is unlawful to transmit radio signals within the United States without a license or waiver from the FCC. See 47 U.S.C. § 301. In September 1997 the station manager of KTGO complained to the FCC that Neset was operating an unlicensed radio station in the Tioga area on a frequency of approximately 88.1 mhz. FCC engineer Frank Evans investigated the complaint and sent Neset a letter advising him of the Communications Act's radio broadcast licensing requirements and the penalties for unlicensed operation. Neset replied by letter. He admitted making unlicensed radio broadcasts, but asserted that his First Amendment rights were at stake and that he could not obtain a license because the FCC no longer issued licenses for low-power radio broadcasts.

In October 1997, Evans traveled to Tioga and measured the field intensity of Neset's radio broadcasting signal. The signal significantly exceeded the maximum intensity allowable under FCC regulations for unlicensed broadcasting. See 47 C.F.R. § 15.239(b) (88-108 mhz FM transmissions not exceeding 250 micro-volts per meter at distance of 3 meters). In late November 1997 Neset stopped broadcasting for about 10 days, but then resumed broadcasting on a different frequency (88.3 mhz). In March 1998 Evans returned to Tioga to measure the field intensity of the radio transmissions coming from Neset's property. He again found that the signal significantly exceeded the maximum intensity allowable under the regulations.

In March 1998, the government brought this action against Neset in federal district court for declaratory and injunctive relief. The government sought to enjoin Neset from making radio transmissions without a license or a waiver in violation of 47 U.S.C. § 301. See 47 U.S.C. § 401(a) (civil action to enjoin noncompliance). In his answer, Neset admitted making the radio transmissions and that he had not applied to the FCC for a radio broadcast license or a waiver. However, he asserted several affirmative defenses raising constitutional and other challenges to the FCC microbroadcasting regulations. The district court consolidated the preliminary and permanent injunction proceedings.

First, Neset argued that the FCC microbroadcasting regulations are invalid because the FCC failed to comply with the Paperwork Reduction Act or the Administrative Procedures Act. The district court found that it did not have subject matter jurisdiction over these statutory violation defenses because the doctrine of primary jurisdiction required that Neset first challenge an FCC policy or practice before the FCC and then seek judicial review exclusively in the courts of appeals. See Neset, 10 F. Supp. 2d at 1114-15.

Neset also argued that the FCC microbroadcasting regulations are unconstitutional and violated his free speech rights and those of others who listen to his

broadcasts. Neset relied upon a recent decision from the Northern District of California in which a microbroadcaster raised similar affirmative defenses challenging the constitutionality of the microbroadcasting regulations. See United States v. Dunifer, 997 F. Supp. 1235 (N.D. Cal. 1998), aff'd on other grounds, 219 F.3d 1004, 1007-09 (9th Cir. 2000) (holding district court lacked subject matter jurisdiction under applicable statutory framework to decide microbroadcaster's constitutional challenges to licensing regulations). Neset argued that the regulations were overbroad, were not narrowly tailored to further the government's interests in preserving the available broadcast spectrum or preventing signal interference, and interfered with the First Amendment rights of his listeners to receive valuable information. The district court adopted the Ninth Circuit's view that a defendant must establish standing to assert an affirmative defense. See 10 F. Supp. 2d at 1116 ("In raising an affirmative defense, a defendant is seeking the jurisdiction of the court to hear its claims as much as a plaintiff and, therefore, standing becomes an issue for the defendant as well.") (citing Ninth Circuit cases). But see Wynn v. Carey, 599 F.2d 193, 196 (7th Cir. 1979) (holding standing applies only to plaintiffs). The district court also found persuasive the Dunifer court's constitutional analysis and decided that, like Dunifer, Neset lacked standing to raise his constitutional defenses because he had not applied for a radio broadcast license or a waiver and thus the regulations have never been applied to him. See 10 F. Supp. 2d at 1115-16 (thus failing to show causal connection between injury and conduct of which complained); Dunifer, 997 F. Supp. at 1240, 1242, 1243-44.

The district court then found that Neset violated the license requirement of 47 U.S.C. § 301. See 10 F. Supp. 2d at 1116. Neset admitted that he was responsible for unlicensed radio transmissions on 88.1 mhz in October 1997 and on 88.3 mhz in March 1998. The record showed that he continued to broadcast after being notified of the violation. The district court rejected his asserted defenses. The district court enjoined Neset and all persons in active concert or participation with him from making radio transmissions within the United States without first obtaining a license or other appropriate authorization (such as a waiver) from the FCC. See id. at 1116-17 (noting

that violation of law supports finding of irreparable injury and no adequate remedy at law exists). The district court subsequently denied Neset's motion to alter or amend the judgment. This appeal followed.

During the pendency of this appeal, the FCC essentially reversed its position on microbroadcasting and adopted rules authorizing the licensing of two new classes of non-commercial FM radio stations, one operating at a maximum power of 100 watts and one at a maximum power of 10 watts. See In re Creation of Low Power Radio Service, FCC 00-19, MM Docket No. 99-25, 65 Fed. Reg. 7616, 2000 WL 85304, at ¶1 (released Jan. 27, 2000) (to be codified at 47 C.F.R. pts. 11, 73, 74). Under the new regulations the FCC will issue licenses to microbroadcasters to operate low-power FM stations. However, it is not clear whether former unlicensed microbroadcasters like Neset will be eligible for a low-power broadcasting license under the new regulations. See id. at ¶¶ 51-55 (rejecting amnesty for unlicensed broadcasters and announcing acceptance of applicants who, if at some time in the past they broadcast illegally, certify that they voluntarily ceased broadcasting illegally no later than Feb. 26, 1999, without specific directions to terminate by the FCC, or they ceased broadcasting illegally within 24 hours of being advised by the FCC to do so). See United States v. Any & All Radio Station Transmission Equipment, 204 F.3d 658, 662 (6th Cir. 2000) (Strawcutter) (noting FCC change in position on microbroadcasting).

In addition, this court struggled with and finally resolved similar difficult jurisdictional issues in an unrelated enforcement action brought by the government against another unlicensed microbroadcaster. See United States v. Any & All Radio Station Transmission Equipment, 976 F. Supp. 1255 (D. Minn. 1997) (Fried I), aff'd, 207 F.3d 458 (8th Cir. filed Mar. 27, 2000) (Fried III) (on rehearing by the panel) (the initial panel opinion was reported at 169 F.3d 548 (filed Feb. 26, 1999) (Fried II)). Unlike the present case which is a civil action for declaratory and injunctive relief under 47 U.S.C. 401(a), Fried was an in rem forfeiture action under 47 U.S.C.

§ 510(a).[2] The government sought to seize and forfeit the broadcast equipment that Fried used to operate an unlicensed radio station, out of his apartment in downtown Minneapolis, Minnesota. Like Neset, Fried had never applied for a license, although he maintained that he had requested a waiver (and the district court assumed for purposes of analysis that he had). Following a complaint from a licensed FM radio station, FCC agents investigated and confirmed unauthorized radio transmissions from Fried's apartment. In August 1996 the FCC mailed a warning letter to Fried. He responded to the warning letter by challenging the constitutionality of the microbroadcasting regulations and requesting a waiver of the licensing requirements, but he did not cease broadcasting.

Rather than seeking an injunction as it did in the present case, the government in Fried instead filed an in rem forfeiture action. Fried in his answer raised several affirmative defenses challenging the constitutionality of the microbroadcasting regulations. The government argued that the court of appeals, not the district court, had exclusive jurisdiction to determine the validity of the microbroadcasting regulations, citing 47 U.S.C. § 402(a) (referencing 28 U.S.C. § 2342, which provides in part that the court of appeals has exclusive jurisdiction to determine the validity of all final orders of the FCC made reviewable by 47 U.S.C. § 402(a)). Fried argued that the district court, not the court of appeals, had exclusive jurisdiction over the forfeiture action, including his affirmative defenses challenging the constitutionality of the microbroadcasting regulations, because the specific jurisdictional grant over forfeiture actions, 47 U.S.C. § 504(a), provides for trial de novo in the district court, a reference

_____

[2]The FCC has several enforcement options: criminal prosecution under 47 U.S.C. § 501, a civil action to enjoin noncompliance under id. § 401(a), monetary forfeitures to penalize violations under id. § 503, and seizure and forfeiture of radio equipment under id. § 510(a).

which he argued contemplated adjudication of all issues raised in the forfeiture action, including any and all defenses to forfeiture.

We initially agreed with Fried and held that the district court was the exclusive forum for review of in rem forfeiture orders.  See Fried II, 169 F.3d at 552 (McMillian, J.), citing Dougan v. FCC, 21 F.3d 1488, 1491 (9th Cir. 1994) (holding 47 U.S.C. § 504(a) is a specific review statute which vests exclusive jurisdiction over forfeiture actions in district court and cuts off general jurisdiction in courts of appeals under 47 U.S.C. § 402(a) to review FCC orders).  We also held that the district court had jurisdiction to consider Fried's affirmative constitutional defenses.  See id. at 553, citing Dunifer, 997 F. Supp. at 1238.  However, we later granted rehearing, 182 F.3d 1026 (8th Cir. 1999), and, upon reconsideration, held that the district court has exclusive jurisdiction to adjudicate the in rem forfeiture action, but not Fried's constitutional challenges to the microbroadcasting regulations; Fried's defenses exclusively focused on the validity of the microbroadcasting regulations, and 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 clearly confined the review of the validity of FCC regulations to the courts of appeals, not the district courts.  We held that "[a] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction."  Fried III, 207 F.3d at 463 (Noonan, J.), citing FCC v. ITT World Communications, Inc., 466 U.S. 463, 468 (1984) (ITT) (holding exclusive jurisdiction of the courts of appeals over rulemaking by the FCC may not be evaded by seeking to enjoin a final order of the FCC in the district court), and Southwestern Bell Telephone v. Arkansas Public Service, 738 F.2d 901, 906 (8th Cir. 1984) ("Where exclusive jurisdiction is mandated by statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action."), vacated and remanded on other grounds, 476 U.S. 1167 (1986).  But see  Strawcutter, 204 F.3d at 667 (holding that district court had jurisdiction to adjudicate constitutional defenses in forfeiture action) Dougan v. FCC, 21 F.3d at 1490-91 (holding court of appeals lacked jurisdiction over monetary forfeiture action); United States v. Any & All Radio Station Equipment,  93 F. Supp.

2d 414, 417-22 (S.D.N.Y. 2000) (rejecting statutory and constitutional defenses raised by microbroadcaster defendant in forfeiture action, including Religious Freedom Restoration Act and First, Fourth and Fifth Amendments); see also Prayze FM v. FCC, 214 F.3d 245, 250-53 (2d Cir. 2000) (noting jurisdictional question without resolving it; court assumed district court had jurisdiction to hear microbroadcaster's First Amendment challenges in § 401(a) injunction action because FCC sufficiently demonstrated that it would likely prevail).

For reversal, Neset argues that the district court erred in holding that he lacked standing to raise a constitutional claim. Neset argues that he has been directly injured because he has been enjoined from broadcasting. In his view, the issue is not standing but rather exhaustion of administrative remedies. Neset argues that the district court erred in requiring him to exhaust his administrative remedies (by applying to the FCC for a license, requesting a waiver or petitioning for a change in the regulations) because it would have been futile to do so. Neset argues that, at the time he was broadcasting without a license, the FCC was simply not issuing any low-power licenses and had only granted two waivers since 1978 (one in Alaska and one in a remote part of New Mexico). Neset also argues that, assuming exhaustion of administrative remedies is required, the district court should have dismissed the government's action and ordered the FCC to issue a cease and desist order before seeking injunctive relief, thus invoking the doctrine of primary jurisdiction.

The government argues that Neset's constitutional attack on the microbroadcasting regulations is not a defense to this 47 U.S.C. § 401(a) action seeking to enjoin him from broadcasting without a license or a waiver. This argument is similar to its argument in Fried that the district court did not have jurisdiction to adjudicate affirmative constitutional defenses in a 47 U.S.C. § 510(a) in rem forfeiture action. See Brief for Appellee at 16-23. The government argues that, even assuming for purposes of analysis that Neset's constitutional attack is a defense in this action for injunctive relief, Neset should instead seek administrative relief by applying for a

license or a waiver or by petitioning the FCC to institute rulemaking procedures to amend the microbroadcasting regulations, and then, if administrative relief is denied, by seeking judicial review in the courts of appeals. See id. at 19. The government also argues that, because Neset has not applied for a license or sought a waiver or petitioned the FCC to change the microbroadcasting regulations, he lacked standing to challenge the microbroadcasting regulations. See id. at 20-21. The government also argues that exhaustion of administrative remedies would not be futile. See id. at 22. Finally, the government argues on the merits that Neset has no First Amendment free speech right to broadcast radio transmissions without a license or a waiver and that his listeners have no First Amendment free speech right to listen to radio transmissions broadcasted without a license or a waiver.

We do not reach the standing issues[3] because we hold that under the statutory scheme the district court lacked subject matter jurisdiction over Neset's affirmative defenses attacking the validity of the microbroadcasting regulations.  Although <u>Fried III</u> involved an in rem forfeiture action under 47 U.S.C. § 510(a), we think its rationale applies as well to actions seeking injunctive relief under 47 U.S.C. § 401(a).  <u>See Dunifer</u>, 219 F.3d at 1007 (applying reasoning in <u>Fried III</u> to § 401(a) injunction action).  <u>But cf. Prayze FM v. FCC</u>, 214 F.3d at 250 (assuming district court had jurisdiction to hear microbroadcaster's constitutional challenges in § 401(a) injunction action).  As we noted in <u>Fried III</u>, "the Supreme Court has authoritatively determined that the exclusive jurisdiction of the Court of Appeals over rulemaking by the FCC may

[3]In order to establish standing and invoke federal jurisdiction, a litigant must allege an actual and concrete injury consisting of an invasion of a legally protected interest, a causal connection between the injury and the conduct of which the litigant complains, and the likelihood that the injury will be redressed by a favorable judicial decision.  <u>See, e.g., Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  Because Neset has not applied for a license or requested a waiver, the microbroadcasting regulations then in effect have not been applied to him, and he cannot show a causal connection between the alleged violation of his First Amendment rights and the FCC's failure to issue low-power broadcast license or grant him a waiver.  <u>See Prayze FM v. United States</u>, 83 F. Supp. 2d 293, 295 (D. Conn. 1999) (holding plaintiff microbroadcaster lacked standing to challenge regulations because it had not applied for a license or waiver), <u>aff'd sub nom. Prayze FM v. FCC</u>, 214 F.3d 245, 251-53 (2d Cir. 2000) (holding microbroadcaster lacked standing to bring as-applied challenge but did have standing to bring facial challenge); <u>United States v. Dunifer</u>, 997 F. Supp. 1235, 1240 (N.D. Cal 1998) (holding defendant microbroadcaster lacked standing to challenge regulations because he had not applied for a license or waiver), <u>aff'd on other grounds</u>, 219 F.3d 1004 (9th Cir. 2000); <u>see also Free Speech ex rel. Ruggiero v. Reno</u>, 200 F.3d 63, 65 (2d Cir. 1999) (per curiam) (holding plaintiff microbroadcasters lacked standing to challenge FCC's authority to issue cease and desist order absent allegation that FCC's exercise of that authority caused them any actual injury or to challenge FCC's authority to initiate forfeiture proceedings absent allegation that FCC had initiated forfeiture proceeding against them or that it had seized any of their property).

not be evaded by seeking to enjoin a final order of the FCC in the district court." 207 F.3d at 463, citing ITT, 466 U.S. at 468. Fried III expressly extended the statutory mandate of exclusive jurisdiction from offensive claims to affirmative defenses. Id., citing Southwestern Bell Telephone v. Arkansas Public Service, 738 F.2d at 906 ("Where exclusive jurisdiction is mandated by statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action."). Neset's defensive attack on the validity of the microbroadcasting regulations would be just as much "an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction." Fried III, 207 F.3d at 463. For that reason, we hold that the district court lacked subject matter jurisdiction over Neset's affirmative defenses attacking the validity of the microbroadcasting regulations. We express no opinion on the merits of Neset's statutory or constitutional defenses.[4]

---

[4]Several recent decisions have rejected similar constitutional arguments raised by other microbroadcasters on the ground that the First Amendment right to free speech does not include either the right to broadcast radio transmissions without a license or a waiver or the right to listen to radio transmissions broadcast without a license or a waiver. See United States v. Any & All Radio Station Transmission Equip., 204 F.3d 658, 665-68 (6th Cir. 2000) (Strawcutter); Free Speech ex rel. Ruggiero v. Reno, 200 F.3d 63, 64-65 (2d Cir. 1999) (per curiam); United States v. Any & All Radio Station Transmission Equip., 93 F. Supp. 2d 414, 420-21 (S.D.N.Y. 2000); see also National Broad. Co. v. United States, 319 U.S. 190, 227 (1943) ("The right of free speech does not include . . . the right to use the facilities of radio without a license.").

The Sixth Circuit in Strawcutter rejected application of the doctrine of primary jurisdiction. See 204 F.3d at 664 (holding that doctrine of primary jurisdiction, which arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency, does not apply when the specially competent agency is itself the plaintiff) (citing United States v. Alcon Labs., 636 F.2d 876, 888 (1st Cir.) (noting "deference to an agency's primary jurisdiction makes little sense in the context of an enforcement proceeding initiated by the agency"), cert. denied, 451 U.S. 1017 (1981)).

The district court did have jurisdiction over the § 401(a) injunction action. We hold that the district court did not abuse its discretion in permanently enjoining Neset from broadcasting without a license. The record established that Neset was broadcasting without a license or a waiver in violation of the Communications Act, as amended. Accordingly, the judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I agree with the Sixth Circuit's decision in United States v. Any & All Radio Station Transmission Equip., 204 F.3d 658 (6th Cir. 2000) (Strawcutter), that the district courts in this type of case have jurisdiction to hear First Amendment challenges to the Federal Communication Commission's prohibition of microbroadcasting in the context of an enforcement action filed against them. Accordingly, I would remand to the district court for further proceedings.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.