**PRAYZE FM, also known as Incom, L.L.C., Mark Blake and Loretta Spivey, Plaintiffs–Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Defendant–Appellee.**

**Docket No. 98–6246**

United States Court of Appeals, Second Circuit.

Argued: March 29, 2000

Decided: June 5, 2000

---

Robert T. Perry, Center for Constitutional Rights, New York, N.Y. (Barbara J. Olshansky and William Goodman, Center for Constitutional Rights, and Richard S. Order, Robert R. Simpson, and Craig Lyle Perra, Updike, Kelly & Spellacy, P.C., Hartford, Conn., on the brief), for Plaintiffs–Appellants.

Jacob M. Lewis, Department of Justice, Civil Division, Washington, D.C. (Stephen C. Robinson, United States Attorney, and Alan M. Soloway, Assistant United States Attorney, New Haven, Conn.; David W. Ogden, Acting Assistant Attorney General, and Susan L. Pacholski, Attorney, Department of Justice, Civil Division, Washing-

ton, D.C., on the brief), for Defendant–Appellee.

Before: JACOBS, CALABRESI, and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiffs-appellants Prayze FM (also known as Incom, L.L.C.), Mark Blake, and Loretta Spivey (collectively, "Prayze") appeal from an order of the United States District Court for the District of Connecticut (Warren W. Eginton, *J.*), granting the motion of defendant-appellee Federal Communications Commission ("FCC") for a preliminary injunction barring Prayze FM, an unlicensed radio station, from broadcasting. We affirm.

## BACKGROUND

Prayze FM is an unlicensed commercial gospel radio station operating out of Bloomfield, Connecticut, a suburb of Hartford. Its asserted goal is to bring gospel music and Christian programming to the African–American community in the greater Hartford area.

Federal law requires that radio broadcasters be licensed by the FCC. *See* 47 U.S.C. § 301. Until very recently, the FCC licensing regulations precluded licensing of stations, like Prayze, that operated at less than 100 watts (also known as "microbroadcasters"). *See* 47 C.F.R. §§ 73.211(a), 73.511(a), 73.512(c) (1999). The FCC's rules, however, may be waived on petition if good cause is shown. *See id.* § 1.3.

It is undisputed that Prayze has never applied for a conventional broadcast license or for a waiver of the regulation prohibiting microbroadcasting. Prayze claims that it investigated the licensing process and had discussions with the FCC regarding its plans prior to broadcasting, but was stymied by the FCC's assertion that there was no vacant space on the airwaves for a new FM station in the Hartford area, and also by its policy of not granting licenses to stations operating at less than 100 watts. Prayze began broadcasting without a license on November 23, 1996. Shortly thereafter, the FCC began receiving correspondence and newspaper clippings that alerted it to Prayze FM's existence. In March 1997, the FCC sent a letter to counsel for Prayze stating that no request for a waiver of the regulations was on file and that Prayze should submit an application for a license and waiver. In January 1998, after no waiver request had been received, the FCC, through the United States Attorney's Office, wrote to Prayze and requested that it cease broadcasting.

In February 1998, Prayze filed suit in district court, alleging, *inter alia,* that by requiring a license to broadcast but failing to provide a process for applying for a license for a low-power station, the FCC's licensing scheme violated Prayze's rights under the First Amendment and constituted an impermissible prior restraint. Prayze asked for a declaratory judgment to that effect and an injunction barring the FCC from taking any action to prevent Prayze from broadcasting.

In March 1998, the FCC filed suit in district court against Prayze, and the two cases were consolidated. The FCC sought a preliminary injunction prohibiting Prayze from broadcasting without a license, in violation of § 301. In response, Prayze contended that the regulations barring microbroadcasting unconstitutionally precluded it from obtaining a license and complying with § 301.

On September 11, 1998, the district court "provisionally granted" the FCC's motion for a preliminary injunction "until such time as this case becomes legally justiciable by the filing by Prayze FM of an appropriate application and waiver, fully documented, with the FCC and by proceedings thereupon." The district court's order contained no findings of fact, and revealed conclusions of law only through a citation to *United States v. Dunifer,* 997

F.Supp. 1235 (N.D.Cal.1998). Nor did it specify the particular acts enjoined.

Prayze moved for a stay of the preliminary injunction, and the district court referred Prayze's motion to a magistrate. A hearing was held on the motion for a stay, at which time the meaning of the district court's order was disputed. On October 13, 1998, the magistrate issued a report and recommendation finding that "Judge Eginton's signature on the September 11, 1998 order stands as a finding that PRAYZE was broadcasting without a license in violation of 47 U.S.C. § 301, that it was likely to continue broadcasting in the event an injunction did not enter, and that the FCC had demonstrated, at least in part on the basis of *Dunifer,* a strong probability of success on the merits in these cases." The magistrate recommended denying Prayze's motion for a stay.

On October 27, 1998, Prayze filed an application with the FCC for an experimental broadcast license to operate a commercial low-power FM station in Bloomfield, pursuant to an FCC regulation that allows such licenses "for the purposes of carrying on research and experimentation for the development and advancement of new broadcast technology, equipment, systems or services." 47 C.F.R. § 74.102. Prayze requested expedited consideration of its application and a waiver of the FCC's rule requiring experimental stations to be noncommercial, *see id.* § 74.182(b). Notably, Prayze did *not* apply for a conventional broadcast license and a waiver of the rule against microbroadcasting, but sought only an experimental station license.

On November 2, 1998, the district court adopted the findings of fact and conclusions of law contained in the magistrate's report and recommendation, denied Prayze's motion for a stay, and once again enjoined Prayze from broadcasting. The district court's order did not mention Prayze's application for an experimental broadcast license.

Prayze appealed to this Court. On October 13, 1999, we vacated the injunction and remanded the matter to the district court for the limited purpose of supplementing the record with findings of fact and conclusions of law that would enable informed appellate review, as required by Federal Rules of Civil Procedure 52(a) and 65(d).[1] *See Prayze FM v. FCC,* 199 F.3d 1323, 1999 WL 1012679 (2d Cir. Oct.13, 1999) (unpublished disposition). The panel retained jurisdiction so that after receiving the district court's additional findings, we could dispose of the appeal.

On November 8, 1999, the district court once again granted the FCC's motion for a preliminary injunction, but this time in an order including findings of fact and conclusions of law. *See Prayze FM v. United States,* 83 F.Supp.2d 293 (D.Conn.1999). The court first noted that "[w]here the government seeks injunctive relief for a statutory violation, there is a presumption of irreparable harm," *id.* at 294–95, but agreed with Prayze that the presumption did not apply where the constitutionality of the statute allegedly violated was at issue, *see id.* at 295. It concluded, however, that "this issue is not before the Court," because Prayze, having never applied for a license,[2] lacked standing to challenge the FCC's licensing regulations. *Id.* As a re-

---

**1.** Rule 52(a) provides that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ.P. 52(a). Rule 65(d) requires that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or

other document, the act or acts sought to be restrained." Fed.R.Civ.P. 65(d).

**2.** As discussed above, however, Prayze had applied for an experimental broadcast license and a waiver of the rule against commercial experimental stations on October 27, 1998, although it had not applied for a conventional broadcast license and a waiver of the rule against microbroadcasting.

sult, the court found that the FCC was entitled to the presumption of irreparable harm. *See id.*

Turning to the FCC's likelihood of success on the merits, the court simply noted that "[t]here is no dispute that Prayze FM is operating and continues to operate an unlicensed radio station in violation of 47 U.S.C. sec. 301," so that the FCC had demonstrated a likelihood of success. *Id.* at 296. Accordingly, the court enjoined Prayze from broadcasting until it had obtained a license or other authorization in accordance with § 301. *See id.*

Prayze took the position that the district court had acted outside its jurisdiction in issuing a new preliminary injunction, and resumed broadcasting on November 23, 1999. On November 29, the FCC moved in the district court for an order clarifying the district court's jurisdiction to grant a new injunction and holding Prayze in contempt for violating the new injunction. On December 3, Prayze filed a Petition for Writ of Prohibition in this court asking us to stop the district court from holding contempt proceedings. On December 6, the district court found Prayze in contempt. It nevertheless delayed the penalty phase of the contempt proceedings pending our ruling on the writ of prohibition. On January 18, 2000, we granted the writ of prohibition, noting that the district court was without jurisdiction to enter the renewed injunction. *See Prayze FM v. FCC*, No. 98–6246 (2d Cir. Jan. 18, 2000) (unpublished order). We ordered further briefing and oral argument on the merits of Prayze's appeal. *See id.*

On January 20, 2000, the FCC promulgated regulations creating two new classes of low-power radio stations with power levels of 10 and 100 watts. *See Creation of Low Power Radio Service,* 65 Fed.Reg. 7616 (to be codified at 47 C.F.R. pts. 11, 73, 74) (Feb. 15, 2000). The new low-power stations must be operated on a noncommercial basis. *See id.* Unlicensed microbroadcasters will be· allowed to obtain the new licenses only if they certify that they either (1) voluntarily ceased unlicensed broadcasting no later than February 26, 1999, without being specifically told to do so by the FCC, or (2) ceased unlicensed broadcasting within 24 hours of being told to do so by the FCC. *See id.* at 7623. As with all other regulations of the FCC, these requirements are waivable if good cause is shown. *See* 47 C.F.R. § 1.3.

On February 2, 2000, the FCC formally denied Prayze's application for an experimental license, stating that it was not a *bona fide* experimental proposal within the meaning of § 74.102 because it would not make a new technological contribution to broadcasting, but was merely "a conventional commercial FM broadcast station, albeit at a lower power than is currently permitted under the Commission's rules." Letter from FCC to Talib I. Karim 3 (Feb. 2, 2000), *reprinted in* Addendum to Appellee's Br. of Mar. 17, 2000.

## DISCUSSION

On appeal, Prayze renews its challenge to the injunction.

 We review the district court's grant of a preliminary injunction for abuse of discretion. Such abuse occurs when the court applies an incorrect legal standard, makes clearly erroneous factual findings, or errs in the substance or form of its order. *See Rosen v. Siegel,* 106 F.3d 28, 31 (2d Cir.1997). We are, however, "free to affirm an appealed decision on any ground [that] finds support in the record." *Beal v. Stern,* 184 F.3d 117, 122 (2d Cir. 1999) (quoting *Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 719 (2d Cir.1998)) (internal quotation marks omitted).

 "To obtain a preliminary injunction, a party must demonstrate (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in the mov-

ant's favor." *Rosen*, 106 F.3d at 32 (internal quotation marks and citations omitted).

## A. ·*Irreparable Harm*

■ Prayze argues that the district court erred in finding that the FCC was entitled to a presumption of irreparable harm. This argument, however, is foreclosed by our recent decision in *Free Speech v. Reno*, 200 F.3d 63 (2d Cir.1999) (per curiam). In that case, we affirmed the district court's grant of a preliminary injunction against an unlicensed microbroadcaster who, like Prayze, challenged the constitutionality of the microbroadcasting regulations. We held that "[t]he Government sufficiently showed irreparable harm simply by establishing that plaintiffs were broadcasting without a license. Such unlicensed broadcasting threatens the FCC's orderly allocation of scarce resources and the clear communication of current and future licensees. No further showing of irreparable harm was necessary to warrant the preliminary injunction." *Id.* at 65. As in *Free Speech*, the FCC has sufficiently demonstrated irreparable harm here.

## B. *Likelihood of Success on the Merits*

In determining that the FCC had demonstrated a likelihood of success on the merits, the district court simply noted that, "[a]s there is no dispute that the plaintiffs are transmitting in violation of section 301[,] it is likely that the government will prevail on the merits of its case." *Prayze FM*, 83 F.Supp.2d at 296. The court did not address Prayze's contention that the licensing regulations violated the First Amendment, having previously found that Prayze had no standing to raise that claim. *See id.* at 295. The question, however, cannot be resolved so simply. Nevertheless, we conclude that, on the record before us, the FCC has shown a likelihood of success on the merits of Prayze's constitutional claims sufficient to warrant the issuance of a preliminary injunction.

In order to prevail on its First Amendment claim and successfully to defend against the FCC's enforcement action, Prayze would have to establish the following: (1) that the district court has jurisdiction to consider the constitutional validity of FCC regulations in the context of an enforcement proceeding; (2) that Prayze has standing to raise its constitutional claims; and (3) that the regulations are, in fact, unconstitutional.

Whether the district court has jurisdiction to consider the constitutionality of FCC regulations in an enforcement proceeding is unclear. The jurisdiction of the district courts over FCC matters is limited by statute. While the Communications Act of 1934 gives the district courts jurisdiction over actions brought by the FCC that seek an injunction ordering a party to comply with the licensing statute, *see* 47 U.S.C. § 401(a), the Act also confers on the courts of appeals "exclusive jurisdiction ... to determine the validity of ... all final orders of the Federal Communications Commission." 28 U.S.C. § 2342(1); *see also* 47 U.S.C. § 402(a).

Two courts of appeals have considered the similar question of whether § 504 of the Communications Act, which confers on the district courts jurisdiction to hear in rem forfeiture suits brought by the government against unlicensed broadcasters, *see id.* § ·504(a), allows the district courts to consider constitutional challenges to the microbroadcasting regulations when these are asserted as defenses to forfeiture. The Eighth Circuit found such challenges barred on the ground that "[a] defensive attack on the FCC regulations is ... an evasion of the exclusive jurisdiction of the Court of Appeals." *United States v. Any & All Radio Station Transmission Equip. ("Laurel Avenue")*, 207 F.3d 458, 463 (8th Cir.2000). The Sixth Circuit came to the opposite conclusion, reasoning that it was unlikely that Congress intended to deprive defendants in forfeiture actions of the ability to raise constitutional defenses to those actions. *See United States v. Any & All*

*Radio Station Transmission Equip. ("Maquina Musical")*, 204 F.3d 658, 667 (6th .Cir.2000). But in reaching that result the Sixth Circuit relied in relevant part on an Eighth Circuit opinion that was superseded by the Eighth Circuit's March 27, 2000 opinion in *Laurel Avenue*. *See id.* (citing *United States v. Any & All Radio Station Transmission Equip.*, 169 F.3d 548, 554 (8th Cir.) (M. Arnold, *J.*, concurring in the result), *reh'g granted*, 182 F.3d 1026 (8th Cir.1999), *and superseded*, 207 F.3d 458 (8th Cir.2000)).

 We need not, however, resolve the jurisdictional question today, for even assuming that the district court had jurisdiction to hear Prayze's constitutional challenges,[3] the FCC has sufficiently demonstrated that—in the current posture of the case—it would likely prevail.

The district court held that, because Prayze had not applied for a license, it had no standing to raise its First Amendment challenge to the validity of the regulations forbidding microbroadcasting. This ruling was, however, only partly correct. For, although Prayze does not yet have standing to raise its as-applied challenge, it does have standing to bring a facial challenge to the regulations.

 Prayze has not applied for a conventional broadcast license and waiver of the regulations that on their face would prohibit it from obtaining such a license. As a general rule, "to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir.1997). "This threshold requirement for standing

may be excused only where a plaintiff makes a substantial showing that application for the benefit . . . would have been futile." *Id.* We conclude that, for several reasons, Prayze has not demonstrated the requisite futility. First, the Court of Appeals for the District of Columbia Circuit (which would decide any appeal from a denial of a broadcast license, *see* 47 U.S.C. § 402(b)) has held that the FCC must give a hard look to waiver applications that raise First Amendment concerns and that such waivers cannot be arbitrarily denied. *See WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C.Cir.1969); *see also KCST–TV, Inc. v. FCC*, 699 F.2d 1185, 1191 (D.C.Cir. 1983). Second, and crucially, the FCC has just drastically changed its policy regarding microbroadcasting, *see Creation of Low Power Radio Service*, 65 Fed.Reg. 7616, indicating that it regards microbroadcasting far more favorably than in the past, and, hence, that its past treatment of waiver applications by microbroadcasters may not be a reliable guide to its future conduct. Third, although even the FCC's new regime seemingly prohibits granting licenses to broadcasters, like Prayze, who operated without a license in defiance of the FCC's instructions to stop, *see id.* at 7623, that rule, like all FCC rules, is subject to waiver, *see* 47 C.F.R. § 1.3, and there is no history from which to judge how the FCC will handle such waiver requests.

Under the circumstances, we cannot say an application by Prayze for a license and a waiver would be futile. Accordingly, Prayze does not now have standing to bring an as-applied challenge to the microbroadcasting regulations. We, of

---

**3.** Assuming the existence of jurisdiction in the district court to decide Prayze's constitutional claims does not, in this instance, violate the Supreme Court's proscription of hypothetical jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). That case—in a constitutional standing context—prohibited courts from assuming their *own* jurisdiction in order to reach the merits of a case. *See id.* But our jurisdiction to decide

this appeal from the grant of a preliminary injunction is clear, as was the district court's jurisdiction to issue the injunction. On appeal, we are charged with deciding whether the FCC sufficiently established a likelihood of prevailing on Prayze's constitutional claims, should those claims be properly brought before the district court. And for that purpose we can assume, arguendo, that they could be.

course, express no view on the merits of an as-applied challenge, were Prayze to be denied a license or waiver and subsequently choose to bring such a challenge in a court of competent jurisdiction.

■ Prayze does, however, have standing to raise its facial challenge to the licensing scheme. Prayze contends variously (1) that the licensing and waiver scheme is an unconstitutional prior restraint, in that it delegates standardless discretion to the FCC to grant or deny licenses; and (2) that the regulations are not sufficiently narrowly tailored to the government interest in orderly allocation of the broadcast spectrum to pass constitutional muster. Such challenges are cognizable in a First Amendment context even where the application of the licensing scheme to the challenger's own speech is constitutional. *See, e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 611–13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A speaker subject to licensure has standing to make a facial challenge "without the necessity of first applying for, and being denied, a license" when the scheme "allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). And such a speaker can also bring a facial challenge to a regulation that "purport[s] to regulate the time, place, and manner of expressive or communicative conduct" on the ground that it is not sufficiently narrowly tailored. *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. Prayze's narrow tailoring challenge to the licensing scheme barring microbroadcasting is analogous to such a challenge to a time, place, or manner regulation. *See FCC v. League of Women Voters*, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) (addressing a facial challenge to an FCC regulation on the ground that it was not narrowly tailored).

Of course, to say that Prayze has standing to assert a facial challenge is not to say that the facial challenge is meritorious. *See, e.g., Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). We conclude that the FCC has sufficiently demonstrated a likelihood of prevailing on the merits of Prayze's facial First Amendment challenge to the regulations.

■ As to Prayze's standardless discretion argument, the Supreme Court has held that the authority given to the FCC to license broadcasters does not vest unfettered discretion in the agency. *See NBC v. United States*, 319 U.S. 190, 226, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (noting that the FCC's statutory mandate to regulate in the public interest was not a "mere general reference to public welfare without any standard to guide determinations," but was informed by "[t]he purpose of the Act, the requirements it imposes, and the context of the provision in question" (quoting *New York Cent. Securities Corp. v. United States*, 287 U.S. 12, 24, 53 S.Ct. 45, 77 L.Ed. 138 (1932)) (internal quotation marks omitted)). And although the *NBC* case did not address the microbroadcasting regulations (which were enacted long after that case was decided), we believe the same principles would be likely to apply to the situation before us.

We also conclude that, on this record, it is likely that the FCC would prevail against any challenge based on the argument that the microbroadcasting regulations are not sufficiently closely tailored. Although the Supreme Court has held that restrictions on broadcasting are valid only when narrowly tailored to further a substantial government interest, *see League of Women Voters*, 468 U.S. at 380, 104 S.Ct. 3106, the Court has also repeatedly recognized that spectrum scarcity justifies a quantum of governmental regulation of speech in the broadcasting context that would not be constitutionally tolerable elsewhere, *see id.* at 377, 104 S.Ct. 3106. The prohibition of microbroadcasting was designed to further the substantial government interest in allowing other broadcast-

ers to operate free of interference. And although that prohibition is broad, the existence of the waiver provision, together with the requirement that the FCC give a hard look to waiver applications that raise colorable First Amendment claims, *see WAIT Radio*, 418 F.2d at 1159, make it difficult to conclude that the regulations are invalid *on their face.*

We therefore hold that the FCC has sufficiently met its burden of showing that it is likely to prevail on Prayze's First Amendment claims at this time. We emphasize, however, that we express no opinion whatsoever on the merits of an eventual as-applied challenge by Prayze. Indeed, we do not even decide Prayze's facial challenge. We merely conclude that the FCC has shown a likelihood of prevailing sufficient to justify the preliminary relief granted by the district court. As a result, our holding, like any ruling on a preliminary injunction, does not preclude a different resolution of Prayze's facial challenge on a more fully developed record.

### C. The Contempt Proceedings

In December 1999, the district court held Prayze in contempt for violating the injunction that it had purportedly issued on November 8, 1999. (It did not, however, conduct the penalty phase of the contempt proceedings.) The district court was without jurisdiction to enter that injunction, since this court had vacated the district court's injunction of November 2, 1998 and directed the matter to the district court for the limited purpose of supplementing the record with findings of fact and conclusions of law. At that time we retained the mandate for all other purposes. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir.1994) ("[E]ntry of a new judgment by the district court [is] not ... normally within the power of a district court when the court of appeals has 'retained' jurisdiction."). As a result, we granted Prayze's motion for a writ prohibiting the district court from conducting any further contempt proceedings stemming from Prayze's failure to comply with the purported injunction of November 8, 1999. We now reaffirm that Prayze cannot be subject to contempt sanctions for violating that injunction, since the district court was without jurisdiction to enter it. *See United States v. United Mine Workers of America*, 330 U.S. 258, 294-95, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Emery Air Freight Corp. v. Local Union 295*, 449 F.2d 586, 592 (2d Cir.1971).

\* \* \*

Because the order of November 8, 1999 was entered without jurisdiction, we cannot affirm it. Rather, we VACATE our order of October 13, 1999, *Prayze FM v. FCC*, 199 F.3d 1323, 1999 WL 1012679 (2d Cir. Oct.13, 1999) (unpublished disposition), and today AFFIRM the order of the district court dated November 2, 1998, granting the FCC's motion for a preliminary injunction barring Prayze from further unlicensed broadcasting.